Downey, Judge,
delivered the opinion of the court:
The plaintiff entered into a contract with the United States, dated January 1, 1918, but executed March 4, 1918, for the manufacture of 150,000 4.7-inch shrapnel, at $6.90 each, or $7.06 each if boxed, materials and component parts to be furnished by the United States. By reason of some delays on the part of the United States in the furnishing of a component part which operated to prevent the completion of shrapnel and thus deprived the plaintiff of payments when they had been reasonably expected, a supplemental contract was entered into dated August 2, 1918, which repeated the contract price provided for in the original contract, but so stated it that payments might be made during the progress of the work upon shrapnel not finally completed. Both contracts are attached to the petition as exhibits and are made a part of the findings by reference and need not in detail be considered here.
After the signing of the armistice the need for further production along the line of this contract ceased, but it was *11 the policy of the United States to avoid such abrupt termination of contracts as might work serious harm to contractors, and all such contractors were notified that no abrupt or drastic action was contemplated. However, on the 12th of December, 1918, the contracting officer at the Pittsburgh district ordnance office communicated to the plaintiff by direction of the Chief of Ordnance a request, set out in the findings, that in the public interest it should immediately suspend operation under its contract. The plaintiff replied that it had actually in process of manufacture the materials furnished which were to be machined, and called: attention to article 8 of the contract.
. On the 4th of January, 1919, the contracting officer sent to' the plaintiff company a notice, also set out in the findings,, to the effect that the Chief of Ordnance was of the opinion that the completion of its contract had become unnecessary and that the contract was terminated except to the extent permitted under article 8, followed by a request to the plaintiff to immediately suspend further operations. The plaintiff replied that it had the entire quantity stipulated in the contract in process and therefore anticipated completing the contract. Following this correspondence there was a communication from the Pittsburgh district ordnance office U the Government inspector at plaintiff’s plant stating that the plaintiff would be permitted to complete 149,958 shrapnel, which was the total number which the plaintiff claimed that it had put in process under the contract. There were subsequent negotiations with reference to a reduction of the number of shrapnel to be completed to 125,000, but the Government authorities apparently abandoned the attempt to consummate such an arrangement, and on February 26, 1919, the assistant district ordnance chief at the Pittsburgh office addressed a communication to the Procurement Division of the Ordnance Department at Washington, set out in the findings, in which he recommended that steps be taken to terminate plaintiff’s contract and stating that shipping instructions had been asked for the purpose of removing from plaintiff’s plant all materials on hand, and that the inspector at the plant had been instructed to cease inspection of any parts over 61,536, which balanced up with the number of *12 diaphragms which had been furnished by the Government, in which connection he stated that the fact that the Government had failed to furnish the plaintiff with diaphragms sufficient to complete the contract breached it so far as the Government was concerned. Upon receipt of this communication, under date of February 27,' 1919, the contracting officer placed an indorsement thereon stating that he had that day, as contracting officer, signed and forwarded to Pittsburgh by messenger “ a notice of breach ” of the plaintiff’s contract. The notice referred to, which was delivered to the plaintiff, stated that he was instructed by the Chief of Ordnance to accept no more work contemplated by the contract, that inspectors would be withdrawn, and funds theretofore, allotted would be revoked, that “this cancels your contract with the United States dated January 1, 1918,” and that “ this supersedes all prior notices directed to you and relating to the above war-order number.” The plaintiff immediately ceased operations under the contract and on the following day, in the presence of representatives of the United States, began the taking of a complete inventory showing all shrapnel and materials and component parts on hand and the various stages of completion of those in process of manufacture.
At this time all of the forgings which had been furnished to the plaintiff from which the shrapnel cases were to be manufactured had been through the first process of manufacture, which was knoAvn as “ cutting off,” and 149,958 had been thus treated. Theretofore, in November, 1918, an authorized officer of the United States had sent out to' contractors forms for manufacturers’ stock reports, revised to November 15, 1918, with various instructions appended, in one paragraph of which it was stated that “ ‘ put in process ’ means that the first manufacturing operation on the particular material or component has been started. In the case of forgings in machining plants this would ordinarily mean that the ‘ cut-off ’ operation has been performed.”
The plaintiff maintains that under article 8 of its contract it was entitled, if the Government should conclude to cancel, to complete all shrapnel which had been put in process and that at the time the contract was terminated and even at an *13 earlier time it had put in process all the forgings furnished, and is entitled to be paid the contract price therefor, less the cost tq it of completion. The defendant’s theory is that under article 8 of the contract it had a right to cancel the same whenever the contracting officer should be of the opinion that the completion of the contract had become unnecessary and that plaintiff’s recovery must be upon the basis of the cost to it of the work done at the time of the cancellation, plus a reasonable profit.
These contentions render necessary, as determinative of plaintiff’s rights, a construction of article 8 of the contract, and for that purpose it seems necessary, eliminating concluding paragraphs apparently unimportant, to quote the article:
“Aetiole VIII. This contract being necessitated by a state of war now existing between the United States of America and the Imperial German Government and the Imperial and. Royal Austro-Hungarian Government, it is desirable and expedient that provision be made for its termination upon fair and equitable terms in the event of the termination or limitation of the war, or in event that in anticipation thereof the Contracting Officer should be of the opinion that the completion of this contract has become unnecessary. It is therefore stipulated and agreed that at any time, and from time to time during the currency of this contract, the Contracting Officer may notify the Contractor that such part or parts of the shell herein contracted for then remaining to be delivered as the Contracting Officer may designate shall not be made or further proceeded with, and the Contractor shall thereupon cease making or proceeding with the material so designated. The Contractor shall, however, complete the manufacture of shell then actually in process, and also such parts herein contracted for 'as are not included in the notice. Such notice will only be given in accordance with the spirit of this article.
“ In the event of the cancellation of this contract as in this Article provided, the United States will inspect the completed shell then on hand and the shell then in the process of manufacture when completed, and will pay to the Contractor the price herein agreed upon for each and every unit accepted by and delivered to the United States. The United States will also pay to the Contractor the cost of the component parts and materials purchased with the approval of the Department then on hand in an amount not exceeding *14 the requirements for the completion of this contract, which shall be in accordance with the specifications referred to in ‘ Schedule 1 ’ hereto attached, and also all costs theretofore expended and for which payment has not been previously made, and all obligations incurred solely by the performance of this contract of Avhich the Contractor can not be otherwise relieved, together with a sum equivalent to ten (10) per cent of all such costs so expended, except that said ten (10) per cent shall not apply on the cost of purchased ■component materials not in process of conversion. The ten (10) per cent of cost herein allowed shall be subject to such addition as the Contracting Officer may deem necessary to fairly and justly compensate the Contractor for work, labor, and service rendered under the contract.”
If the meaning of this section of the contract is clear from its phraseology, no further resort is necessary; but if after consideration of its provisions there remains doubt as to the ■construction to be put upon them, other circumstances, particularly the conduct of the parties and the construction put upon the provisions by the parties themselves, may be resorted to in aid of construction.
It is plainly apparent that there are statements in this article which, taken separately, are inconsistent, and it seems to us that the defendant’s contention with reference to the meaning of this article is predicated largely upon a detached portion thereof, without proper consideration of all of the provisions read together. It is provided in this article that “ it is therefore stipulated and agreed that at any time, and from time to time during the currency of this contract, the contracting officer may notify the contractor that such part or parts of the shell herein contracted for then remaining to be delivered as the contracting officer may designate shall not be made or further proceeded with, and the contractor shall thereupon cease making or proceeding with the material so designated,” and read alone this paragraph would seem to sustain the defendant’s contention as to the right of the United States to terminate the contract at any time; but there are significant provisions beside the one quoted and certainly very materially modifying it. It is not infrequently the case that a general statement in a ■contract read alone seems to mean one thing, but that sub *15 sequent provisions properly applied to it change entirely its meaning.
Following the quoted provision it is said that “ the contractor shall, however, complete the manufacture of shell then actually in process,” and further it is provided that, “ in the event of the cancellation of this contract as in this article provided, the United States will inspect the completed shell then on hand and the shell then in the process of manufacture when completed, and will pay to the contractor the price herein agreed upon for each and every unit accepted by and delivered to the United States.”
It clearly appears from the record in this case, and indeed it would seem that it must be a matter of common- knowledge, that many processes are required in the manufacture of shrapnel, beginning with the cutting-off process, followed by the heat-treating and machining of the shell, and the various subsequent processes down to the point of loading and finally finishing, and that at any time, in the midst of the performance of a contract such as this, shells would be found in various stages of completion. It would be wholly unreasonable to assume that a given number of shells could pass from the first process to a state of completion within .any one day so that upon termination of the contract the contractor would be found with a completed number of shrapnel on the one hand and with materials and component parts only upon the other. It follows as a reasonable conclusion, and one which is in fact fully supported by the record in this case, that when, in its midst, a contract such as this was terminated the contractor would necessarily be found with a large number of shells in every possible stage of partial completion.
With this view of the actual situation existing in connection with the performance of such a contract, there appears very manifest reason why the right to cancel the contract should have carried with it modifying provisions looking to the completion of such shrapnel as had been put in process at the time it was determined to cancel, and consideration of the provisions written into this contract require that conclusion.
*16 If there were room for doubt upon consideration of these provisions themselves, there seems to be little doubt as to the construction which was put upon them by the parties. There is no doubt that when communications were received by the plaintiff' with reference to the termination of this contract, the plaintiff always maintained that it had a right, under the contract, to complete such shrapnel as was “in process,” and the record leaves little room to doubt that this contention on the part of the plaintiff was conceded by the representatives of the United States. The first communication on the subject was not an order canceling the contract, but it was in the form of a request, to which the plaintiff did not see fit to accede. The second communication, while savoring of a notice, was nevertheless in its essential parts a request, and to this the plaintiff again did not see fit to accede. As to these two communications, it is also to be observed that the final notice of February 27, 1919, stated that it superseded all'prior notices. It was evidently regarded by the contracting officer as the final and the only effective notice. But before the issuance of that notice and subsequent to the plaintiff’s contention, after receipt of the first two communications, that it had a right under the contract to complete all shrapnel then in process, a very significant feature of the matter is found in the communication from the Pittsburgh district ordnance office to the Government inspector at plaintiff’s plant to the effect that the plaintiff would be permitted to complete 149,958 shrapnel under its contract. That communication, under the circumstances, can be regarded as nothing else than a recognition of the right of the plaintiff to complete all shrapnel put in process, and the fact that the United States had no right under article 8 to cancel the contract without permitting the completion of the shrapnel put in process is clearly recognized by the contracting officer when in his indorsement of February 27, 1919, he stated that he had signed and forwarded “ a notice of breach of the above contract.”
While it is to be said that if the contracting officer was mistaken as to the legal effect of the action he had taken and his action did not, in effect, amount to a breach of the contract, the United States would not be bound by the *17 erroneous construction which he had put upon his own action; yet, irrespective of its legal effect in that respect, this action and the communications cited all indicate very clearly the construction which was put by the representative of the Government upon article 8 of the contract as to the conditions under which the United States might cancel, and justify the conclusion that upon the part of the contracting officer the action taken was regarded as a breaching of the contract and not as an authorized cancellation.
The construction to be put upon the language itself, supplemented, if necessary, by the construction put upon it by the parties, leaves room for no other conclusion than that the contract was breached and that the rights of the plaintiff are for consideration on that basis.
The rule as to the measure of damages in such circumstances is well established and it is scarcely necessary to review the many authorities holding that the true measure is the difference between the contract price which the contractor would have been entitled to receive upon completion of the contract and the cost to him of its completion, with one other element for consideration. In one of the older cases, frequently cited, this element is expressed as a “reasonable deduction for the less time engaged and for release from the care, trouble, risk, and responsibility attending the full execution of the contract.” United States v. Speed, 8 Wall. 77 at 85.
The proposition was well stated by Judge Hay in Broadbent Portable Laundry Corporation v. United States, 56 C. Cls. 132, in the following language:
“The court will also take into consideration the relief of the contractor from responsibility for a large part of the contract, and for the time and trouble which a full performance would have required and imposed upon it and the release of contractor’s plant for other work. And as it was relieved by relinquishment of a large part of the contract by the United States of all the responsibility and risks involved in so much of it, as well as from devoting its time and attention to it to that extent, there must be a reasonable deduction from the probable profits on those accounts. In the application of the principles above laid *18 down there is always difficulty; each case must be determined by its own circumstances.”
It is scarcely necessary to review the state of the account as between the parties and to discuss the elements which entered into that account on both sides. The record is very satisfactory upon all these questions and the findings have specifically treated each item necessarily entering into the account, followed by a summary thereof, which is to be found in Finding VIII. Upon the question of the deduction to be made on the theory above stated the court can find no basis in the record for any accurate mathematical determination of the correct amount. In fact the very principle itself involves elements which are necessarily speculative to an extent and not susceptible of accurate determination. We deem it the duty of the court, under such circumstances, to exercise its judgment as best it may in the light of all the facts which in any manner tend to aid it in forming a correct conclusion and thus determine the amount which its judgment dictates as fair to be deducted on this account. This amount the court has determined and it is indicated, not as a finding, but in its conclusion of law, predicated upon the findings.
There is one other feature of the case which must receive consideration. When the original contract was executed, accompanied by detailed specifications, it was found that there was some omission to state the physical properties required as a result of the prescribed heat-treating process. It appears that the plaintiff had been engaged in the manufacture of shrapnel shells for the United States under a former contract and it had assumed that the requirements under this contract would be the same as those under the former contract, but when attention was called to the omission in this respect, representatives of the Government indicated requirements which were very much in excess óf those which had been anticipated by the plaintiff. After considerable negotiation these requirements were modified to some extent but were left upon such a basis that the plaintiff was required to install additional and unanticipated facilities for heat treatment, which it did at an expense to it of $16,302.50, and this amount it seeks to recover.
*19 While it is possibly true that upon the showing made in the record with reference to this feature of the contract work the plaintiff, if not otherwise precluded, might be entitled to recover thi,s amount, we are of the opinion that it is precluded by reason of the fact that subsequent to the determination of the exact requirements of the Government in this respect, the plaintiff entered into a supplemental contract in which, with some modifications as to payments, evidently for the benefit of the plaintiff, the contract price for the shrapnel was again stipulated as it had been in the original contract. It would not be unreasonable to assume the possibility that the additional benefits accruing to the plaintiff under the supplemental contract in the matter of payments to be made might have been regarded as adequate compensation for the additional burdens assumed in the matter of heat-treatment processes, but however that may be, the supplemental contract specified the price to be paid by the United States for completed shrapnel at a time when the plaintiff was fully informed as to the requirements, and by this fact alone the plaintiff is to be regarded as precluded from claiming any additional compensation on the account stated.
Geaíiam, Judge; Hat, Judge; Booth, Judge; and Campbell, Chief Justice, concur.
ON DEPENDANT’S MOTION POE NEW TRIAL
Downey, Judge,
delivered the opinion of the court:
The defendant’s motion for a new trial herein has been under advisement for a considerable length of time, due largely to the fact that under leave granted by the court to submit testimony in support of that branch of the motion predicated on section 115 of the Judicial Code, intended to be within reasonable limits, the testimony of forty-five witnesses has been taken and the burden imposed of reading and abstracting 775 pages of typewritten matter, besides exhibits. That in other respects responsibility for delay herein may not seem to rest upon the court, it is to be said that a motion for a new trial was filed by the defendant on June *20 22, 1923, in support of which a brief was filed by the Assistant Attorney General himself, at whose request submission was delayed. Thereafter, in December, 1923, there was an application to withdraw this brief from the files and for leave to file an amended motion for a new trial which was granted, the theory upon which the original motion was briefed was entirely abandoned and a new motion was filed December IT, 1923.
It was not until December 1,1924, that the defendant filed all its evidence, under the order above referred to, and its request for amended and additional findings and the plaintiff’s reply thereto were not filed until February 2, 1925. It is, of course, since that date only that the matter has been in the hands of the court for examination and consideration; and, desirous as we were of giving careful and conscientious consideration to all the Government’s contentions, the burden has been imposed of examining this mass of testimony, a large part of which has been found to be wholly immaterial and some of it not to be commended from the standpoint of credibility. It may be added with propriety that attorneys charged originally with the preparation and trial of this case have taken no part in the presentation of this motion, although still in the service of the Department of Justice when it was filed.
The assigned grounds for new trial; (a) error of fact, (b) error of law, (c) newly discovered evidence, and (d) because of fraud, wrong, and injustice done the United States, are all in effect embraced in the last asserted cause and have been so treated by defendant, in whose final brief, submitted with request for new and additional findings, predicated to a considerable extent on the additional testimony taken pending this motion, it is said: “ This case comes before the court on defendants motion for a new trial, alleging that fraud, wrong, and injustice have been done the United States. The Government presents the motion pursuant to section 1T5 of the Judicial Code.”
The volume of testimony presented precludes any detailed review here. With perhaps casual reference, conclusions must suffice. As to the conclusions to be drawn it may per- *21 baps be but just to note that the- taking of this testimony has proceeded upon the apparent theory that the leave granted ran to the Government alone and plaintiff has taken no testimony contra, although it is apparent that some of the testimony taken is of such a nature that plaintiff would desire to meet it if the matters involved were at issue in a trial de novo.
We deem it desirable to refer briefly to one question which has been frequently stressed and that is as to the execution of the contract, the contention being that it was not in fact executed by the contracting officer named therein but was in fact a proxy-signed contract. The contract was not actually signed by the contracting officer but it was signed by one duly authorized to execute it in his name, the authority so to do antedating the actual execution although not the date. The situation to be met and the plan adopted to secure the proper execution of this with thousands of other contracts, far beyond the ability of one man to execute and not make of the contracting officer, as he testifies, “simply a rubber stamp,” is fully explained, in the testimony of Colonel Mc-Roberts and the conclusion justified that the contract was properly and legally executed. It would be unconscionable to hold that a method adopted, after securing, as he says, the advice of the Attorney General as to its legality, and so evidently a procedure adopted of necessity under the stress of the emergency resulted in invalidating the large number of contracts so executed.
In view of some things said in the present record it is appropriate to suggest that this is not a Dent Act case and the limitations of that act are thei’efore inapplicable.
Without discussing in detail other features of the case, suffice it to say that a careful reexamination of the original record, together with the additional evidence now submitted, leads to the conclusion that the findings as originally made should, in one respect, be modified. Originally, the showing made by the plaintiff as to the cost to it of completing the shrapnel in process when the contract was terminated was not in any respect challenged, with the result that that showing Avas accepted without the detailed consideration *22 which, under other circumstances, would have been given to it. It is now concluded that the item in the tabulated statement set out in Finding VIII, “Cost of completing shrapnel in process, $191,304.58,” should be modified to read: “ Cost of completing shrapnel in process, $237,031.58,” and that, because of such modification, the former judgment should be set aside, and that, upon the amended findings, the plaintiff should have judgment for $345,524.24.
It is fully comprehended that this conclusion is reached without an opportunity to the plaintiff to present any further testimony on the question, but the possibilities in that respect have received consideration, and since it is entirely within the power of the court to modify its findings of its own motion, as to it may seem proper, it is deemed advisable so to order, following which it will be further ordered that the defendant’s motion be overruled.
It will therefore be ordered that the tabulated statement m Finding VIII be amended to read as follows:

Summary

53,132 completed shrapnel, at $7.06_$375, 111. 92
93,592 shrapnel in process, at $6.90_ 645,784.80
Boxes for 17,067 shrapnel, at 16 cents_ 2, 730.72
Machining 257 piped shells_ 235.16
Deduction from voucher, Dec. 31, 1918_ 1,264. 57
Received by plaintiff on contract_ $405, 650.81
Cost to United States of 2,375 scrapped shells- 8, 008. 97
Cost of completing shrapnel in process_ 237,031. 58
650, 690. 86
Value to contractor of turnings_ 9,479.51
1,025,127.17 641,211.35 641,211.35
383, 915. 82
It will further be ordered that the former judgment herein be set aside and that the plaintiff, in lieu thereof, do now have judgment for $345,524.24.
It will further be ordered that the defendant’s motion for a new trial be overruled.'
Geai-iam, Judge; Hat, Judge; Booth, Judge, and Campbell, OMef Justice, concur.